UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX CICCOTELLI,<br><br>               Plaintiff,<br><br>      v.<br><br>MVC CAPITAL, INC., JOHN CHAPMAN, PHILLIP GOLDSTEIN, GERALD HELLERMAN, DOUGLAS KASS, ROBERT KNAPP, SCOTT KRASE, ART LIPSON, MICHAEL TOKARZ, BARINGS BDC, INC., and MUSTANG ACQUISITION SUB, INC.,<br><br>               Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 10, 2020 (the "Proposed Transaction"), pursuant to which MVC Capital, Inc. ("MVC" or the "Company") will be acquired by Barings BDC, Inc. ("Parent") and Mustang Acquisition Sub, Inc. ("Acquisition Sub," and together with Parent, "Barings").

2. On August 10, 2020, MVC's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Barings. Pursuant to the terms of the Merger Agreement, MVC's stockholders will receive $0.39492 in cash and 0.94024 of a share of Parent common stock for each share of MVC common stock they own.

3. On November 24, 2020, defendants filed a proxy statement/prospectus (the "Prospectus") with the United States Securities and Exchange Commission ("SEC").

4. The Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Prospectus.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of MVC common stock.

9. Defendant MVC is a Delaware corporation and maintains its principal executive offices at 287 Bowman Avenue, 2nd Floor, Purchase, New York 10577.  MVC's common stock is traded on the New York Stock Exchange under the ticker symbol "MVC."

10. Defendant John Chapman is a director of the Company.

11. Defendant Phillip Goldstein is a director of the Company.

12. Defendant Gerald Hellerman is a director of the Company.

13. Defendant Douglas Kass is a director of the Company.

14. Defendant Robert Knapp is a director of the Company.

15. Defendant Scott Krase is a director of the Company.

16. Defendant Art Lipson is a director of the Company.

17. Defendant Michael Tokarz is Chairman of the Board of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Maryland corporation and a party to the Merger Agreement.

20. Defendant Acquisition Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

21. MVC is a business development company that provides long-term debt and equity investment capital to fund growth, acquisitions, and recapitalizations of companies in a variety of industries.

22. On August 10, 2020, MVC's Board caused the Company to enter into the Merger Agreement.

23. Pursuant to the terms of the Merger Agreement, MVC's stockholders will receive $0.39492 in cash and 0.94024 of a share of Parent common stock for each share of MVC common stock they own.

24. According to the press release announcing the Proposed Transaction:

Barings BDC, Inc. (NYSE: BBDC) ("Barings BDC") and MVC Capital, Inc. (NYSE: MVC) ("MVC Capital") announced today that they have entered into a definitive merger agreement under which MVC Capital will merge with and into Barings BDC (the "Transaction"). The combined company, which will remain externally managed by Barings LLC, is expected to have more than $1.2 billion of investments on a pro forma basis. The boards of directors of both companies, the MVC Capital Strategic Review Committee, the independent directors of MVC Capital and the independent directors of Barings BDC have unanimously approved the Transaction, which is expected to close in the fourth quarter of 2020.

Under the terms of the merger agreement, MVC Capital stockholders will receive aggregate consideration of approximately $177.5 million in the form of cash and stock consideration based on Barings BDC's June 30, 2020 net asset value ("NAV") representing total book value consideration of $10.01 per fully diluted MVC Capital share. On a market value basis, based on the closing price of Barings BDC common stock on August 10, 2020, the Transaction represents total consideration for MVC Capital stockholders of $145.5 million or approximately $8.21 per share, representing a premium of 21% to MVC Capital's closing price on August 10, 2020.

MVC Capital stockholders will receive 0.94024 Barings BDC shares for each MVC Capital share, resulting in approximately 16.7 million newly issued Barings BDC shares, having total value of $170.5 million, or $9.62 per share, based on Barings BDC's June 30, 2020 NAV of $10.23 per share. In addition, Barings LLC will pay approximately $7 million in cash, or $0.39492 per share, directly to MVC Capital stockholders at closing. Following the Transaction, Barings BDC's equity base is expected to expand by $170 million and Barings BDC stockholders and MVC Capital stockholders are expected to own approximately 74.2% and 25.8%, respectively, of the combined company. The total value of the consideration to be received by MVC Capital stockholders at closing is subject to adjustment as set forth in the merger agreement and may be different than the estimated total consideration described herein depending on a number of factors, including the number of outstanding shares of Barings BDC and MVC Capital common stock, the payment of tax dividends by MVC Capital, undistributed investment company taxable income and undistributed net capital gains of MVC Capital and changes of the Euro-to-U.S. dollar exchange rate relating to certain of MVC Capital's investments between April 30, 2020 and the closing date. . . .

Consummation of the Transaction is subject to Barings BDC and MVC Capital stockholder approval, customary regulatory approvals and other closing conditions.

J.P. Morgan served as sole financial advisor and Dechert LLP served as legal counsel to Barings BDC. JMP Securities served as financial advisor and Kramer Levin Naftalis & Frankel LLP served as legal counsel to MVC Capital.

*The Prospectus Omits Material Information, Rendering It False and Misleading*

25. Defendants filed the Prospectus with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Prospectus omits material information.

27. First, the Prospectus omits the financial projections for the combined company.

28. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29. Second, the Prospectus omits material information regarding the analyses performed by the Company's financial advisor, JMP Securities LLC ("JMP").

30. With respect to JMP's Selected Public Companies Analyses, the Prospectus fails to disclose the individual multiples and metrics for the companies observed in the analyses.

31. With respect to JMP's Selected Precedent M&A Transactions Analysis, the Prospectus fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

32. With respect to JMP's Dividend Discount Analysis for MVC, the Prospectus fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 14.5% to 16.5%; (ii) the terminal values used in the analysis; and (iii) JMP's basis for applying a range of terminal multiples of 0.75x to 0.95x.

33. With respect to JMP's Management Liquidation Analysis, the Prospectus fails to disclose JMP's basis for applying a selected range of NAV multiples of 0.60x to 0.74x.

34. With respect to JMP's Premiums Paid Analysis, the Prospectus fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

35. With respect to JMP's Dividend Discount Analysis for Barings, the Prospectus fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 14.0% to 16.0%; (ii) the terminal values used in the analysis; and (iii) JMP's basis for applying a range of terminal multiples of 0.80x to 1.00x.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. Third, the Prospectus omits material information regarding JMP.

38. The Prospectus fails to disclose the amount of JMP's compensation that is contingent upon the consummation of the Proposed Transaction.

39. The Prospectus also fails to disclose the timing and nature of the past services JMP provided to the Company and its affiliates, as well as the amount of compensation JMP received in connection therewith.

40. Further, the Prospectus fails to disclose whether JMP provided past services to Barings; if so, the Prospectus must disclose the timing and nature of the services and the amount of compensation JMP received in connection therewith.

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The omission of the above-referenced material information renders the Prospectus false and misleading.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and MVC

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. MVC is liable as the issuer of these statements.

46. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

47. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

49. The Prospectus is an essential link in causing plaintiff to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Prospectus, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Barings

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants and Barings acted as controlling persons of MVC within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of MVC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

54. Each of the Individual Defendants and Barings was provided with or had unlimited access to copies of the Prospectus alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the

Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

56. Barings also had supervisory control over the composition of the Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Prospectus.

57. By virtue of the foregoing, the Individual Defendants and Barings violated Section 20(a) of the 1934 Act.

58. As set forth above, the Individual Defendants and Barings had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 11, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Timothy J. MacFall*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*